1
2
3
4
5
6
7

8          **UNITED STATES DISTRICT COURT**

9          **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   MILLENNIUM LABORATORIES, INC., a          CASE NO. 12CV1063-MMA (JMA)
     California Corporation,

12                                             **ORDER DENYING DEFENDANT'S**
                                 Plaintiff,    **MOTION TO DISMISS, OR, IN THE**
13          vs.                                **ALTERNATIVE, FOR MORE**
                                               **DEFINITE STATEMENT**
14
     AMERITOX, LTD., a Texas limited           [Doc. No. 9]
15   partnership,
                                 Defendant.
16

17

18          Pending before the Court is Defendant Ameritox, LTD's ("Ameritox") motion to dismiss

19   Plaintiff Millennium Laboratories, Inc's ("Millennium") complaint for failure to state a claim

20   under Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, for a more definite statement

21   under Rule 12(e).  [Doc. No. 9.]  The Court, in its discretion, took the matter under submission

22   pursuant to Civil Local Rule 7.1(d)(1).  Having considered the briefs, and for the reasons stated

23   herein, the Court **DENIES** Defendant's motions.

24                                          **BACKGROUND**

25          Plaintiff Millennium is a specialty diagnostics laboratory which provides services to the

26   chronic pain market.  [*Compl.*, Doc. No. 1, ¶ 3.]  A key service of Millennium is providing reports

27   to physicians relating to the results of laboratory tests performed by Millennium.  [*Id.* ¶ 6.]  In

28   2011, Millennium re-designed its reports to include a specific combination of graphs and charts.

1    [*Id.*]  This combination includes: (1) a bell curve showing the distribution of results from all

2    patients with a prescription for a medication who tested positive for that medication, as well as the

3    test result for the individual patient prescribed that same medication; and (2) a timeline showing

4    the test result for the individual patient along with the patient's recent prior test results for the

5    same prescribed medication.  [*Id.*]  Millennium designed a report for physicians where the above-

6    described information is shown pictorially.  [*Id.* ¶ 7.]  When the new reports were introduced in

7    June 2011, Millennium's customers immediately expressed strongly favorable opinions.  [*Id.* ¶ 8.]

8    Millennium alleges this report format constitutes a trade dress, which has become a valuable asset

9    of Millennium, symbolizing its high quality services and goodwill.  [*Id.* ¶ 9.]

10    Defendant Ameritox is Millennium's direct competitor in the market for urine and saliva-

11    based drug testing.  [*Id.* ¶ 14.]  Plaintiff alleges that Ameritox has offered for sale "confusingly

12    similar reports that copy Millennium's trade dress."  [*Id.* ¶ 10.]  "By providing infringing reports to

13    practitioners who must decide whether to utilize Millennium or Ameritox's services, Ameritox is

14    attempting to win, and . . . has won business that otherwise would have been captured by

15    Millennium."  [*Id.* ¶ 15.]

16    On April 30, 2012, Millennium filed the instant complaint alleging infringement of its trade

17    dress and violation of California's unfair business competition law.  On June 22, 2012, Ameritox

18    filed a motion to dismiss for failure to state a claim, or, in the alternative, for a more definite

19    statement. [Doc. No. 9.]  Millennium opposes the motion, arguing that its complaint contains the

20    necessary elements to state a valid claim of trade dress infringement.

21                                             **DISCUSSION**

22    **I. Motion to Dismiss**

23    A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint.  *Navarro v. Block*,

24    250 F.3d 729, 732 (9th Cir. 2001).  "While a complaint attacked by a Rule 12(b)(6) motion to

25    dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of

26    [her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of

27    the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to

28    relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

1    (internal quotation marks, brackets and citations omitted).

2        In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of

3    all factual allegations and must construe them in the light most favorable to the nonmoving party.

4    *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).  Legal conclusions need not

5    be taken as true merely because they are cast in the form of factual allegations.  *Roberts v.*

6    *Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987); *W. Mining Council v. Watt*, 643 F.2d 618, 624

7    (9th Cir. 1981).  Similarly, "conclusory allegations of law and unwarranted inferences are not

8    sufficient to defeat a motion to dismiss."  *Pareto v. Fed. Deposit Ins. Corp.*, 139 F.3d 696, 699

9    (9th Cir. 1998).

10       A claim has "facial plausibility when the plaintiff pleads factual content that allows the

11    court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

12    *Ashcroft. v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a

13    'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

14    unlawfully."  *Id.*  "Where a complaint pleads facts that are 'merely consistent with' a defendant's

15    liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.*

16    (citing *Twombly*, 550 U.S. at 557).

17       **A.**     **Trade dress infringement**

18       Millennium's first claim for relief seeks redress for trade dress infringement under 15

19    U.S.C. section 1125(a)(3).  Ameritox argues that the trade dress infringement clam should be

20    dismissed because Millennium fails to plead the elements of the claim with the requisite degree of

21    specificity.

22       Trade dress is "the total image, design, and appearance of a product and 'may include

23    features such as size, shape, color, color combinations, texture or graphics.'"  *Clicks Billiards, Inc.*

24    *v. Sixshooters, Inc.*, 251 F.3d 1252, 1258 (9th Cir. 2001) (citing *Int'l Jensen, Inc. v. Metrosound*

25    *U.S.A., Inc.*, 4 F.3d 819, 822 (9th Cir. 1993)).  To state a claim for trade dress infringement, one

26    must allege that the trade dress is (1) nonfunctional, (2) either "inherently distinctive or [has]

27    acquired distinctiveness through a secondary meaning," and (3) likely to be confused with

28    Defendant['s] products by the consuming public.  *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*,

1  158 F.3d 1002, 1005 (9th Cir. 1998).  "A plaintiff should clearly articulate its claimed trade dress
2  to give a defendant sufficient notice."  *Sleep Sci. Partners v. Lieberman*, 2010 U.S. Dist. LEXIS
3  45385, at \*7 (N.D. Cal. May 10, 2010).

4          Initially, Ameritox contends that Millennium failed to describe its trade dress with
5  sufficient specificity.  Ameritox claims that Millennium should have attached an image of its
6  purported trade dress to the complaint, so that it could properly understand the aspects of
7  Millennium's trade dress, as well as decipher which Ameritox reports are said to be infringing.
8  [*Defendant's Motion to Dismiss* ("*Mot.*") at 1.]

9          The Court agrees that an image of the trade dress and of the infringing reports would
10  greatly assist in clarifying Millennium's position.  Nonetheless, Millennium is not required to
11  attach an image of the trade dress to sufficiently state a claim for trade dress infringement.  Here,
12  Millennium alleges that the trade dress in its test reports consists of: (1) a bell curve showing the
13  distribution of results from all patients with a prescription for a medication who tested positive for
14  that medication, as well as the test result for the individual patient prescribed that same
15  medication; and (2) a timeline showing the test result for the individual patient along with the
16  patient's recent prior test results for the same prescribed medication.  It its opposition, Millennium
17  asserts these two elements breaks down to sub-elements: "That is, the bell curve shows (A) all
18  patients, and (B) the individual patient's result.  Furthermore, the timeline shows (A) the patient's
19  current result, and (B) the patient's recent results."  [*Plaintiff's Opposition to Defendant's Motion*
20  ("*Opp.*") at 2.]

21          Unquestionably, Millennium fails to provide a vivid, in-depth depiction of its purported
22  trade dress.  Nonetheless, despite the thoroughly plain description, the Court is satisfied that
23  Millennium alleges sufficient facts to describe and give Ameritox notice of its claimed trade dress.

24          Next, Ameritox suggests that Millennium's allegations are insufficient to satisfy any of the
25  three elements of a trade dress violation.  To the contrary, the complaint contains allegations of
26  trade dress infringement that are sufficient, albeit barely, to state a claim under federal notice-
27  pleading standards.

28  / / /

- 4 -

12cv1063

**1. Non-Functionality**

First, Millennium has alleged sufficient facts to support a plausible inference that its claimed trade dress is nonfunctional.  Trade dress protection extends only to product features that are not functional.  *Disc Golf Ass'n v. Champion Discs, Inc.*, 158 F.3d 1002, 1006 (9th Cir. 1998).  "A product feature is functional and cannot serve as a trademark if the product feature is essential to the use or purpose of the article or if it affects the cost or quality of the article, that is, if exclusive use of the feature would put competitors at a significant, non-reputation-related disadvantage."  *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 165 (1995) (internal quotation marks omitted).  The inquiry into whether a product is functional, however, is fact intensive with multiple factors for the Court to consider.[1]  Although Millennium may have great difficulty proving that the features it alleges as its trade dress could be denied to other competitors without putting them at a non-reputation-related disadvantage, the question of functionality is a factual one that cannot be resolved on a motion to dismiss.  *See DocMagic, Inc. v. Ellie Mae, Inc.*, 745 F. Supp. 2d 1119, 1141 (N.D. Cal. 2012); *Clicks Billiards, Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1258 (9th Cir. 2001); *Axis Imex, Inc. v. Sunset Bay Rattan, Inc.*, No. C 08-3931 RS, 2009 U.S. Dist. LEXIS2667, at *7-8 (N.D. Cal. Jan. 7, 2009) (Seeborg, Mag. J.).

At this stage, while Millennium's design for the test results may prove to be purely functional, the opposite may be true as well.  Construing Millennium's complaint liberally, it has alleged facts showing that competitors would not need the features of its report in order to compete without disadvantage.  [*Compl.*, ¶ 22 ("The overall visual impression that the . . . arrangement of the [trade dress] elements create is aesthetic . . . and not functional . . . .  Ameritox's services and report would function just as well as they otherwise would without the similar distinctive features it has copied from Millennium . . . .  The cost or quality of Ameritox's services and reports are not affected by incorporating those features.").]

/ / /

---

[1]To determine whether a product is functional, a court should consider whether: (1) the design yields a utilitarian advantage; (2) alternative designs are available; (3) advertising touts the utilitarian advantages of the design; and (4) the particular design results from a comparatively simple or inexpensive method of manufacture. *Disc Golf*, 158 F.3d at 1006.

**2. Secondary Meaning**

Second, Millennium's complaint contains factual allegations to support an inference that its trade dress in the form of its test reports have acquired distinctiveness through secondary meaning. A trade dress has secondary meaning "when, in the minds of the public, the primary significance of a mark is to identify the source of the product rather than the product itself." *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 211 (2000) (internal quotations omitted).  Millennium alleges that (1) its use of this trade dress was exclusive from June 2011 until March 2012; (2) reports containing the trade dress were delivered directly to customers and prospective customers; (3) customers immediately expressed strongly favorable opinions regarding the new test report format following its introduction; and (4) test users equate Millennium's distinctive report format with its high quality services.  [*See Compl.* ¶¶ 8-9.]  These facts raise a plausible inference that consumers generally viewed the alleged trade dress as primarily identifying Plaintiff as the source of the product, rather than merely identifying the product itself.

**3. Likelihood of Confusion**

Finally, Millennium has also alleged sufficient facts from which the Court can infer a likelihood of confusion.  Specifically, Millennium alleges that (1) Ameritox's reports resemble Plaintiff's so closely that consumers are likely to be confused as to the source of Ameritox's services; (2) Ameritox intentionally copied Millennium's trade dress; and (3) Ameritox offered its services containing the imitated trade dress to consumers who previously used Millennium's products, and who associate the trade dress in question with Millennium.  [*Compl.* ¶¶ 10, 12-14.] These facts are sufficient to raise a plausible inference of consumer confusion, either as to the source of the test report services or as to any possible affiliation between Millennium and Ameritox.

**B.     Unfair Competition**

Millennium's second claim for relief asserts violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200  ("UCL").  This claim is premised on the infringement claim.  Because the Court finds Plaintiff states a valid trade dress infringement claim, the UCL claim also stands.  Therefore, the Court **DENIES** Ameritox's motion to dismiss this claim.

12cv1063

**II. Motion For a More Definite Statement**

Alternatively, Ameritox moves for a more definite statement under Rule 12(e). "A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e); *see Coleman v. Sterling*, 2011 U.S. Dist. LEXIS 47377, at \*11 (S.D. Cal. May 3, 2011) (*citing Bureerong v. Uvawas*, 922 F. Supp. 1450, 1461 (C.D. Cal.1996)). "[A] motion for a more definite statement should not be granted unless the defendant literally cannot frame a responsive pleading." *Bureerong*, 922 F. Supp. at 1461 (citation omitted). A motion under Rule 12(e) "is used to provide a remedy for an unintelligible pleading rather than a correction for lack of detail." *Coleman*, 2011 U.S. Dist. LEXIS, at \*11–12 (*citing North County Communs Corp. v. Sprint Communs Co., L.P.*, 2010 U.S. Dist. LEXIS 35825, at \*1 (S.D. Cal. Apr. 12, 2010)). "Motions for a more definite statement are generally viewed with disfavor and are rarely granted." *Id.* (citation omitted).

In this case, Millennium alleges the essential characteristics of its trade dress, and the necessary elements of a trade dress infringement claim. Though the complaint may not be ideal, the Court finds that it is not so vague, ambiguous, or unintelligible that Defendants cannot reasonably prepare a response. Therefore, Defendant's motion for a more definite statement is **DENIED**. Through discovery and Millennium's initial disclosures, Ameritox should be in a position to obtain specificity and an image of the trade dress, the lack of which it complains here.

### CONCLUSION

For the reasons stated herein, the Court **DENIES** Defendant's motions to dismiss and, in the alternative, for a more definite statement.

**IT IS SO ORDERED**.

DATED: October 12, 2012

Hon. Michael M. Anello
United States District Judge

12cv1063